UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GERALD D. ENQUIST,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STATE OF WASHINGTON,<br><br>　　　　　Defendant. | CASE NO. C17-5091 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFF LEAVE TO AMEND, AND STRIKING TRIAL DATE |

This matter comes before the Court on Defendant State of Washington's ("State") motion for summary judgment (Dkt. 36) and Plaintiff Gerald Enquist's ("Enquist") cross-motion for summary judgment (Dkt. 39). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

**I.　PROCEDURAL HISTORY**

On February 7, 2017, Enquist filed a motion to proceed *in forma pauperis* and proposed complaint. Dkts. 1, 1-1. Enquist alleged that, as a result of a 1976 arrest and conviction, he must register with the Pierce County Sex/Kidnapping Offender Registration Unit ("SKORU"). *Id*. He claims that he must report on a weekly basis

because he is a transient, while similarly situated individuals with a fixed address must only contact SKORU once or if they move to a new address. *Id*.

On February 9, 2018, the Court granted Enquist's motion and dismissed his complaint in part. Dkt. 3. The Court dismissed Enquist's right to travel and due process claims in light of *Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997). Dkt. 3. The Court allowed Enquist's equal protection claim to proceed and ordered service. *Id*. Enquist filed two motions for reconsideration arguing that he meant to assert an as applied challenge that Defendants Andria Shaw Conger ("Conger"), Paul Pastor ("Pastor"), and Pierce County Sheriff's Department ("Defendants") failed to properly apply state law in his case instead of a facial challenge to Washington's sex offender laws. Dkts. 10, 12. The Court denied both motions because, even under a liberal interpretation of his complaint, he failed to allege an as applied challenge. Dkts. 11, 13. The Court also explicitly informed Enquist that he could file a motion to amend his complaint if he wanted to assert as applied challenges. *Id*. Enquist failed to file such a motion.

On April 11, 2017, Defendants filed a motion to dismiss arguing that Enquist must bring a facial challenge against the State and, for other reasons, Enquist failed to name proper parties in his complaint. Dkt. 15. On June 1, 2018, the Court granted the motion, dismissed Defendants, and granted Enquist leave to amend his complaint. Dkt. 22.

On June 22, 2017, Enquist filed an amended complaint against the State. Dkt. 23. Enquist asserts that RCW 9A.44.130 violates his constitutional right to travel and equal protection. *Id*.

On March 14, 2018, the State filed a motion for summary judgment. Dkt. 36. On April 2, 2018, Enquist responded and filed a cross-motion for summary judgment. Dkt. 39. On April 13, 2018, the State replied. Dkt. 42.

## II. FACTUAL BACKGROUND

### A. Washington's Statute

Every person living in Washington who has been found guilty of a sex offense or kidnapping offense ("Offender") must register with the county sheriff and provide a variety of information, including the address where they will be living, place of employment, a photograph, and fingerprints. RCW 9A.44.130(1)–(2)(a). Offenders who do not have a fixed address must report to the sheriff's office weekly and provide an accounting of where they stayed during the week. *Id*. § (6)(b).

Registered Offenders are not confined to any specific county. Instead, Offenders may leave the county or state, but the Offender must register with the local authorities when the Offender reaches the relevant destination. In other words, transient Offenders who leave the county in which they are registered, and enter another county, must register with the authorities in the new county. *Id*. § (4)(a)(vi). Offenders who leave Washington State must register with the new state and provide notice to the sheriff of the county in which they were last registered in Washington. *Id*. § (4)(a)(viii). With advanced notice to the sheriff, Offenders may also travel outside the United States. *Id*. § (3).

### B. Enquist

Enquist was convicted in 1976 of two counts of first degree rape and two counts of robbery. *State v. Enquist*, 163 Wn. App. 41, 44 (2011). He received a thirty-year

sentence and was released in April 2007. *Id*. From the date of his release until June 2009, Enquist did not register as an offender. *Id*. Enquist was transient during this period, and, under Washington's former statute, he was required to report weekly to the local sheriff. *Id*. Enquist was convicted of failing to register. *Id*. Enquist appealed the conviction arguing that the registration statute (1) violated the ex post facto clause of the Washington constitution, (2) facially violated his constitutional right to travel, and (3) violated his constitutional right to travel as applied to him. *Id*. at 45–52. The Washington Court of Appeals upheld the conviction concluding in relevant part that "transient sex offender registration requirements are a legitimate and necessary aid to law enforcement, are not unduly burdensome, and do not unconstitutionally limit transient sex offenders' right to travel." *Id*. at 44.

In August of 2016, Enquist was registered in Pierce County and, being transient, was required to report weekly to the SKORU. On August 1, 2016, Enquist sent a letter to Sheriff Pastor indicating his intent to travel on August 17, 2016. Dkt. 39 at 22. Enquist and friends had planned a camping trip in various National Parks located in Washington, Idaho, Montana, South Dakota, Wyoming and Oregon. Dkt. 39 at 2. In response to his letter, Enquist declares that Conger, an office assistant with the SKORU, requested that Enquist provide the exact dates and addresses of where he would be staying on his camping trip. *Id*. at 24. Conger admitted that she requested this information from Enquist and that the "law requires he do so." *Id*. at 29. Enquist responded that he did not have an exact itinerary and that Conger's request directly and indirectly impinged Enquist right to travel. *Id*. at 24.

On September 26, 2016, Enquist filed a complaint with the sheriff's office based on Conger's action in denying his travel request. *Id*. at 25. Enquist claims that Conger denied Enquist's request to travel pursuant to the sheriff's policy 1020, but neither Conger nor any other employee with SKORU would produce a written policy supporting Conger's position. *Id*.

### III. DISCUSSION

There are a number of issues that the Court must address before reaching the merits of the parties' motions. First, Enquist concedes that he failed to recognize that the Court granted him leave to amend to assert as applied claims against Pastor and Conger in their individual capacity. Dkt. 39 at 5 n.9. Because the Court has not addressed the merits of these claims, the Court finds that there are two possible ways in which Enquist may bring these claims. After addressing the merits of Enquist's facial challenges, the Court could strike the trial date and grant Enquist leave to amend. Alternatively, the Court could find that it is too late in this proceeding to amend the complaint. If the Court closed this matter, then Enquist could conceivably file a new motion to proceed *in forma pauperis* and a new complaint asserting these claims. The Court finds that there is no need to engage in these unnecessary procedural hurdles when Enquist is an elderly, homeless, pro se litigant with viable constitutional claims. Therefore, the Court grants Enquist leave to amend his complaint to assert claims against Pastor and Conger in their individual capacity for as applied challenges to the Washington registration statutes and/or the relevant Pierce County policies.

1         Second, the State argues that Enquist lacks standing to bring as applied challenges against the State. The Court, however, finds that Enquist's complaint fails to allege such challenges. Even if it did, the Court agrees with the State that Enquist lacks standing to bring such challenges against the State because the State was not involved in the denial of Enquist's travel request. The State only appeared to defend the facial validity of the statutes in question.

        Third, in his opposition, Enquist includes some complaints regarding the information he must provide on a weekly basis, the facilities Pierce County provides for reporting, and that the reporting statute discriminates against poor people. The Court finds that the first two issues go beyond the scope of the complaint and, as asserted in his opposition, appear to be as applied claims against Pierce County. Regarding the latter issue, the State argues that "Enquist's passing reference to a claim that the statute unconstitutionally discriminates against transient offenders 'due to poverty' is waived." Dkt. 42 at 11 (*Moreno Roofing Co. v. Nagle*, 99 F.3d 340, 343 (9th Cir. 1996)). Contrary to the State's argument, Enquist asserted this claim in his complaint. Dkt. 23, ¶ 21. Although he asserted it as a Fourth Amendment claim, it is in the complaint, and the State failed to address it in its motion for summary judgment. Because the Court declines to *sua sponte* consider the merits of the claim or convert the claim to an equal protection claim, Enquist has shown that at least one claim survives the State's summary judgment motion. The Court, however, finds that trial is unnecessary at this time and will strike the trial date in anticipation of further proceedings on this and other issues.

With these preliminary issue addressed, the Court will turn to the merits of the parties' motions.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B. Facial Challenge**

Enquist "can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Part*y, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739 (1987)). Enquist asserts that Washington's registration statute violates his equal protection rights and his right to travel.

**1. Equal Protection**

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). In determining whether a statute violates the Equal Protection Clause, the courts begin by determining the proper level of scrutiny. *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011). When the statute does not concern a suspect class, rational basis is applied. *Id.* Because

transient persons do not constitute a suspect class, rational basis is the applicable standard. *See Joel v. City of Orlando*, 232 F.3d 1353, 1359 (11th Cir. 2000) ("homeless persons are not a suspect class").

Under rational basis review, the question is whether the registration requirements for transient offenders are "rationally-related to a legitimate governmental interest." *Wright*, 665 F.3d at 1141 (internal quotation marks omitted). "[T]he rational basis standard does not require that the state choose the fairest or best means of advancing its goals[.]" *Robinson v. Marshall*, 66 F.3d 249, 251 (9th Cir. 1995). Instead, courts "merely look to see whether the government could have had a legitimate reason for acting as it did." *Currier v. Potter*, 379 F.3d 716, 732 (9th Cir. 2004) (internal quotation marks omitted).

In this case, Enquist first argues that transient offenders are treated differently than fixed address offenders. Dkt. 39 at 7–10. Enquist, however, fails to show that these two groups of individuals are similarly situated. While individuals in both groups are Offenders who must register with local authorities, the similarities end there. The relevant difference is that one group of individuals has a fixed address and the other group does not. This difference is significant because, in the context of registering an address with the government, one group is able to provide an address and the other is not. Moreover, if the government needs to contact an Offender, an Offender with a fixed address has provided the presumptive location he or she may be located. On the other hand, the government only knows that a transient Offender is presumptively somewhere within the county and can reasonably expect these Offenders to check-in on a weekly

basis. Thus, for the purposes of this analysis, Enquist has failed to show that government authorities treat "differently persons who are in all relevant respects alike." *Nordlinger*, 505 U.S. at 10.

Even if Enquist is correct that transient and fixed address Offenders are similarly situated, the State has advanced a rational basis for treating such individuals differently. The State asserts that it has "a legitimate interest in tracking the shifting location of transient offenders." Dkt. 36 at 10. The Court agrees because the "risk of recidivism posed by sex offenders is 'frightening and high.'" *Smith v. John Doe I*, 538 U.S. 84, 103 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)). Registration protects public safety "by alerting the public to the risk of sex offenders in their community." *Smith*, 538 U.S. at 103. Although Enquist provides some evidence in support of the assertion that there is "no reduction in sexual recidivism due to registries," such evidence goes to the propriety of the registry statute in general and does not support Enquist's challenge to the provision regarding transient Offenders. Overall, Enquist's equal protection challenge fails because the State has provided a rational basis for requiring transient offenders to check in with county sheriffs on a weekly basis whether or not transient offenders are similarly situated to fixed address offenders. Therefore, the Court grants the State's motion on Enquist's equal protection claim.

C.  **Right to Travel**

Although Enquist's complaint appears to assert a facial challenge to the statute as a violation of his rights to travel, he does not seriously contest the State's motion in his opposition. *See* Dkt. 39 at 16. Even if he did, it would be difficult for Enquist to

overcome the Washington Supreme Court's rejection of this challenge. *Enquist*, 163 Wn. App. at 49–52. That court concluded that the registration statute is constitutionally valid even though it imposes some burdens on Offenders that travel. *Id*. Enquist has failed to provide any evidence, argument, or authority for the proposition that the statute violates the federal constitution despite the conclusion that it does not violate the state constitution. Therefore, the Court grants the State's motion on this issue.

To the extent that Enquist is troubled by the alleged threat by Pierce County officials that a felony arrest warrant would issue if Enquist failed to provide his exact whereabouts and/or itinerary during a planned multistate camping trip, these issues will be addressed if Enquist properly amends his complaint. At this time, however, these issues are beyond the bounds of the complaint, and the Court declines to address them.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the State's motion for summary judgment (Dkt. 36) is **GRANTED** and Enquist's cross-motion for summary judgment is **DENIED**. Enquist may file an amended complaint consistent with this order no later than June 15, 2018.[1] If Enquist fails to file an amended complaint, the Court will request a joint status report regarding how the parties intend to proceed on Enquist's remaining Fourth

---

[1] Enquist may be interested in the Federal Bar Association's civil rights clinic. "The Federal Civil Rights Legal Clinics offer free, limited legal advice and referrals to King and Pierce County residents. The Clinic focuses on Washington State residents who are contemplating filing or have already filed legal actions in the United States District Court for the Western District of Washington and who are encountering challenges accessing our legal system." http://www.fba-wdwash.org/legal_clinic.php. "For additional information about the Tacoma Clinic, or to schedule an appointment in Tacoma, please call: 253.572.5134. Phone lines are open Monday through Thursday from 9:00 am to 12:00 pm and 1:15 pm to 4:00 pm." *Id*.

Amendment claim. Regardless, the Court strikes the current trail date and pending trial motions from the Court's calendar.

Dated this 17th day of May, 2018.

*[signature]*
BENJAMIN H. SETTLE
United States District Judge